IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KEVIN FRANK WOODS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:13-cv-1130-NJR-DGW |
| | ) | |
| JOSEPH FOREHAND, ADAM DULLES, and | ) | |
| SCOTT HOWELL, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a). For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment on the Issue of Exhaustion filed by Defendants on May 16, 2014 (Doc. 23) be **GRANTED** and that the Court adopt the following findings of fact and conclusions of law.

### FINDINGS OF FACT

The events giving rise to Plaintiff's Complaint occurred while he was an inmate kitchen worker at the Centralia Correctional Center ("Centralia CC") on November 13, 2012. Plaintiff alleges that he was struck in the head by a projectile and burned with steam and hot water while preparing a meal on that date. In particular, Plaintiff states that while turning a valve to increase

the temperature of a stove, the valve head shot off and hit him on the head and hot water and steam exploded onto his face. He received treatment for his injuries, having sustained second degree burns. Plaintiff alleges that since the incident, he has suffered from headaches, eye pain, impaired vision, and vision loss. On December 9, 2013, the District Court found that Plaintiff could proceed on his unconstitutional conditions of confinement claim, as it relates to his physical safety, against Defendants Adam Dulles, Joseph Forehand, and Scott Howell, who are food supervisors at Centralia CC (Count 1).

On November 13, 2012, Plaintiff submitted a grievance to his counselor (Doc. 24-2). The grievance sought the relief of "proper medical care and to be compensated for my injuries to my face" (*Id.* at 9). The grievance was not filed as an emergency. In the grievance, plaintiff outlined the events of November 13, 2012 and stated:

> And as I came to work today, I was told as well as I saw everything appeared to be in working order this was checked and clearly negligence of great proportions and something must be done to ensure no one gets killed or seriously injured doing their jobs . . . I asked C/O Foreman if the health care had notified him about me going over to H.C.U. for further treatment . . . , he told me (NO) . . . . Furthermore I still have yet to be talked to about this burn or injury to my face from this job. No pictures have been taken of my face no have anyone interviewed me about this matter. (*Id.* at 9-10 [sic, except spelling corrected]).

The grievance does not name any Defendant (except that the reference to C/O Foreman may mean Defendant Forehand) and does not assert, in particular, that the conditions of his confinement were unconstitutional. Plaintiff does, however, outline that he was injured by equipment in the kitchen during his shift, that he had no warning the equipment could not be used and was not in proper working order, and that nothing was done to ensure his physical safety. His grievance also implies that no correctional officer in the kitchen was either aware that he sought medical attention or was concerned about the incident. In an affidavit in response

to the Motion for Summary Judgment, Plaintiff states that he did not mention the names of the food supervisors in the grievance because he only ever referred to them as "boss." Doc. 36-1, p. 11).

The grievance was received by a counselor on November 19, 2012 and responded to on December 7, 2012 (Doc. 24-2, p. 9). A grievance officer received an appeal on December 17, 2012 and denied the same on February 27, 2013 (*Id.* at 8). The Warden concurred on the same day and Plaintiff appealed to the Administrative Review Board (ARB) on March 6, 2013 (*Id.*). The ARB ultimately denied the appeal on February 21, 2014 (*Id.* at 6). In each of the responses by prison officials, the focus is on Plaintiff's medical complaints. Neither the counselor, the grievance officer, nor the ARB address Plaintiff's concern that "negligence of great proportions" caused his injuries.

On June 26, 2014, a hearing was held on the issue of exhaustion pursuant to the requirements of *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). Defendants argued that the grievance failed to sufficiently identify the Defendants herein and that the grievance was not fully exhausted when this lawsuit was filed on November 4, 2013. Specifically, Defendants argued that Plaintiff knew the names of the food supervisors but failed to identify them by name in the grievance. Defendants also argue that Plaintiff should have waited for a response from the ARB, which was made almost a year after Plaintiff appealed to the ARB, before filing suit. Plaintiff states that he waited 8 months for a response from the ARB and that, when no response was received, he filed suit.

At the hearing, this Court mentioned that Plaintiff had allegedly filed another grievance to which no response was filed. This comment was based on Defendants' statement of

undisputed material fact that: "In his Complaint, Plaintiff alleges he exhausted. Plaintiff references only a single grievance. Plaintiff alleges he filed a grievance on March 1, 2013 with the ARB and had not yet received a response when he filed his complaint (Doc. 1 at 4)." (Doc. 24, p. 3). In response to this statement, Plaintiff indicates: "The ARB's delay was excessive and the administrative rules do not offer a time limit that the ARB MUST adhear to provide an answer or that grievant must adhere to in the event the delay is excessive and they desire redress in the court [sic]" (Doc. 36-2, p. 4). This Court did not explore the filing of the alleged March 1, 2013 grievance any further at the hearing because there is no dispute of fact as to the issue. From the records, which are undisputed, it appears that Plaintiff wrote a letter to the ARB, dated February 26, 2013 (to which was attached the November 13, 2012 grievance) seeking redress of the matters outlined in the grievance (Doc. 24-2, pp. 2-3). The ARB received this letter on March 1, 2013 and responded on March 18, 2013 by returning the documents to Plaintiff and instructing him to file the grievance with the prison first (*Id.* at 1). It appears, however, that the ARB received the grievance officer's response, along with the original grievance on March 6, 2013 (Doc. 24-2, p. 8, (containing a "Inmate Issues Mar 06 2013" date stamp)). The ARB subsequently addressed Plaintiff's claims on the merits.

      In his response to the Motion for Summary Judgment, Plaintiff makes no reference to a grievance filed on March 1, 2013 (except the non-responsive response to Defendants' statement of material facts quoted above). And, when given the opportunity to address the Court on the issue of his grievances, Plaintiff again made no mention of a March 1, 2013 grievance. Thus, there is no dispute that there is only one grievance at issue in this matter, the grievance dated November 13, 2012.

## CONCLUSIONS OF LAW

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit.

*Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*,182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies. *Id.* 544 F.3d at 742. If a Plaintiff has exhausted his remedies, the case will proceed on the merits. If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor. ILL. ADMIN. CODE TIT. 20, § 504.810(a). If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id*. §504.810(b). The grievance officer is required to advise the Chief Administrative Officer ("CAO" – usually the Warden) at the facility in writing of the findings on the grievance. *Id.* §

504.830(d). The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. *Id.* § 504.830(d). An inmate may appeal the decision of the CAO in writing within 30 days to the Administrative Review Board for a final decision. *Id.*, § 504.850(a). *See also Dole v*, 438 F.3d at 806-07. An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. *Id.* §504.840.

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

There is no dispute that Plaintiff filed a timely grievance and submitted appeals in

accordance with the administrative rules. At the hearing Defendants contend that Plaintiff should have waited longer than 8 months for a response from the ARB because "staffing changes at the time" excused the ARB from providing a response "within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances." *See* ILL. ADMIN. CODE TIT. 20, § 504.850(f). Defendants argue that by failing to wait for a decision from the ARB, Plaintiff filed suit before his remedies were exhausted and this Court should recommend dismissal. *Perez*, 182 F.3d at 535 ("a suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment"); *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004) ("To prevent this subversion of efforts to resolve matters out of court, it is essential to keep the courthouse doors closed until those efforts have run their course.").

And yet, how long was Plaintiff required to wait after he timely submitted an appeal to the ARB before he could file suit? Defendants argue that waiting 8 months is unreasonable but suggest that a year would be reasonable. (Doc. 42, p. 7). For his part, Plaintiff states that he was told, more or less, by the prison's law library clerk that he would file a lawsuit if he had not heard from the ARB within 6 months (*Id*. at 10). As noted above, administrative remedies can become unavailable when a prison fails to respond to a grievance. *Brengettcy*, 423 F3d. 682 ("we refuse to interpret the PLRA so narrowly as to permit prison officials to exploit the exhaustion requirement through indefinite delay in responding to grievances." (internal citations, quotations, and editing marks omitted)). And, if the delay in responding exceeds 18 months, Plaintiff may well have been able to file suit without waiting any longer. *See Dole*, 438 F.3d at

808 (declining to find that an inmate failed to exhaust when 18 months passed between the submission of a grievance to the ARB, for which a response was not provided, and the filing of a complaint). However, Plaintiff should not have relied on the 6 month window in determining when to file a lawsuit. The regulations at issue state that a response will be provided within 6 months after receipt "*where reasonably feasible under the circumstances*." Thus, the 6 month period is not a hard-and-fast deadline imposed by Illinois' administrative regulations but a time in which a response could be expected. *See Ford* 362 F.3d at 400 (holding that regulations that provide that a decision will be rendered in 60 days "whenever possible" does not mean that an inmate was entitled to file suit immediately after the 60 day period elapsed). In *Ford*, the Seventh Circuit found that "Illinois made a process available to Ford; he had to stick with that process until its conclusion rather than make a beeline for the court just because the administrative officials gave his appeal the time needed to resolve it." *Id.* The Court went on to suggest that a response to an appeal submitted within 6 months (when the regulations provide that a response will be made within 60 days when possible) would be considered "prompt."

In this matter, Plaintiff waited 8 months from the submission of his appeal to the ARB to file a complaint in this Court. He elected to file suit based on erroneous advice that he was entitled to file suit if he didn't hear from the ARB within 6 months of filing his appeal. Just as the *Ford* Court found, merely because the 6 months expired without a decision "does not mean that the prison system tosses out the papers and closed the file . . . ; . . . the process continues." *Id.* Plaintiff should have waited until the ARB issued its decision. This Court offers no opinion on whether Plaintiff should have waited at least 18 months; rather, this Court only concludes that the grievance procedure was not made unavailable by the ARB's failure to provide a response

within 8 months of the submission of an appeal and that Plaintiff should have waited for the ARB to render a response before he elected to file suit.  Accordingly, Plaintiff failed to exhaust his administrative remedies with respect to this grievance prior to filing suit.

In light of this conclusion, Defendants' second argument, that the grievance did not contain sufficient information to grieve the claim made in the complaint, is moot.  *See Roberts v. Neal*, 745 F.3d 232 (7th Cir. 2014).

### RECOMMENDATIONS

For the foregoing reasons, it is **RECOMMENDED** that the Motion for Summary Judgment on the Issue of Exhaustion filed by Defendants on May 16, 2014 (Doc. 23) be **GRANTED**, that his matter be **DISMISSED WITHOUT PREJUDICE**, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto.  The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals.  *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: July 28, 2014**

                                                   **DONALD G. WILKERSON**
                                                   **United States Magistrate Judge**