IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEVIN FRANK WOODS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-CV-1130-NJR-DGW |
| ) | |
| JOSEPH FOREHAND, ) | |
| ADAM DULLES, and SCOTT HOWELL, ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on the Report and Recommendation of United States Magistrate Judge Donald G. Wilkerson (Doc. 43), recommending that Defendants' Motion for Summary Judgment on the issue of exhaustion (Doc. 23) be granted, and that this matter be dismissed without prejudice for failure to exhaust administrative remedies. The Report and Recommendation was entered on July 28, 2014. Plaintiff Kevin Woods filed timely objections (Doc. 44), and Defendants Joseph Forehand, Adam Dulles, and Scott Howell filed a timely response (Doc. 45).

Because timely objections were filed, the undersigned must undertake a *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). *De novo* review requires the district judge to "give fresh consideration to those issues to which specific objections have been made" and make a decision "based on an independent review of the evidence

and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Harper*, 824 F.Supp. at 788 (citing 12 Charles Alan Wright et al., *Federal Practice and Procedure* § 3076.8, at p. 55 (1st ed. 1973) (1992 Pocket Part)); *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). The Court "may accept, reject or modify the magistrate judge's recommended decision." *Harper*, 824 F. Supp. at 788. For the reasons stated below, the Court sustains Woods's objections and denies the Report and Recommendation of Magistrate Judge Wilkerson.

## BACKGROUND

Plaintiff Kevin Woods, an inmate in the Illinois Department of Corrections, is currently incarcerated at Dixon Correctional Center. He filed this action on November 4, 2013, alleging that during his incarceration at Centralia Correctional Center ("Centralia"), he was subjected to unsafe working conditions in the kitchen and denied adequate medical treatment for his resulting injuries (Doc. 1). Specifically, he alleges that he was working in the kitchen at Centralia when a valve on the stove shot off and hit him in the head, and hot water and steam exploded in his face. He claims that he suffered second degree burns on his face as well as constant headaches, eye pain, and changes in his vision. Defendants Forehand, Dulles, and Howell were employees of the Illinois Department of Corrections and food supervisors at Centralia. Woods worked under their supervision, and he alleges that none of them told him that the equipment was in disrepair and he should not use it. The Court conducted a threshold review of the complaint pursuant to 28 U.S.C. § 1915A, and the only claim that survived was Woods's Eighth Amendment claim for unconstitutional conditions of confinement against

Defendants Forehand, Dulles, and Howell (Doc. 9).

On May 16, 2014, Defendants Forehand, Dulles, and Howell filed a Motion for Summary Judgment on the issue of exhaustion (Doc. 23). They assert that there is one relevant grievance, and Woods failed to exhaust that grievance because he filed suit before he received a response from the Administrative Review Board ("ARB"). Defendants further assert that Woods failed to sufficiently identify them by name or describe them in the grievance.

As required by *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), Magistrate Judge Wilkerson held an evidentiary hearing on the issue of exhaustion on June 26, 2014 (Doc. 38). Following the *Pavey* hearing, Magistrate Judge Wilkerson issued the Report and Recommendation currently before the Court (Doc. 43).

### THE REPORT AND RECOMMENDATION AND OBJECTIONS

Based upon the evidence before the Court, Magistrate Judge Wilkerson found that the only grievance at issue was the one submitted by Woods on November 13, 2012 (Doc. 43, p. 4). Woods's counselor responded to the grievance over three weeks later on December 7, 2012 (*Id.* at p. 3). Woods then submitted the grievance to a grievance officer, who recommended denying it, and the Warden concurred on February 27, 2013 (*Id.*). Woods appealed to the ARB, and his appeal was received on March 6, 2013 (*Id.*). After eight months went by without a response from the ARB, Woods filed suit on November 4, 2013. The ARB finally responded and denied Woods's appeal on February 21, 2014, almost a year (353 days to be exact) after it was received and three and a half months after he filed suit (*Id.*).

Magistrate Judge Wilkerson concluded that the grievance procedure was not made unavailable by the ARB's failure to provide a response within eight months of its receipt of Woods's appeal, and Woods should have waited for the ARB's response before filing suit (*Id.* at p. 9). Accordingly, Woods failed to exhaust his administrative remedies. In light of that conclusion, Magistrate Judge Wilkerson declined to address Defendants' second argument that the grievance did not name them or describe them.

Woods objected to Magistrate Judge Wilkerson's conclusion that he failed to exhaust his administrative remedies (Doc. 44). He points out that there is no "concrete time limitation" in which the ARB must respond to inmate grievances (*Id.* at p. 1). The Illinois Administrative Code suggests the ARB should respond to inmate appeals within six months, but when the ARB does not answer within that timeframe, the result is a "confusing situation that trips up inmate litigants" (*Id.* at p. 2). He argues that Magistrate Wilkerson's recommendation should be denied because the ARB's "prolonged response" amounts to a failure to respond, and he followed the grievance process to the best of his ability, but the procedures that inmates are supposed to follow are ambiguous (*Id.* at p. 6).

Defendants filed a response to Woods's objection (Doc. 45). They rely exclusively on *Ford v. Johnson*, 362 F.3d 395, 400 (7th Cir. 2004). They argue that the *Ford* Court addressed the ARB's "grievance response expectations which contained qualifiers," and found that the procedures were not "too confusing to be enforced against inmates who file suit too soon upon not receiving a response" (Doc. 45, p. 2). They point out that the *Ford* Court held that the response from the ARB, which took six months even though

regulations set a sixty-day deadline "whenever possible," could still be considered "prompt" (*Id.*). Accordingly, they argue that the ARB's eleven-month response time in this case could also be considered reasonable (*Id.*).

## DISCUSSION

Based on Woods's objection to the Report and Recommendation, the Court must determine whether the ARB's failure to respond to Woods's appeal within eight months rendered the grievance process unavailable, which in turn permitted him to file suit.

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust their administrative remedies before bringing a civil rights lawsuit. 42 U.S.C. § 1997e(a); *Porter v. Nussle,* 534 U.S. 516, 524 (2002). But prisoners "must exhaust only those administrative remedies that are available." *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). Administrative remedies become "unavailable" if prison officials fail to respond to an inmate's grievances. *Id.*; *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). "Exhaustion is 'an affirmative defense that the defendants have the burden of pleading and proving.'" *Brengettcy*, 423 F.3d at 682 (quoting *Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004)).

As an inmate confined in the Illinois Department of Corrections, Woods was required to follow the three-step grievance process outlined in the Illinois Administrative Code ("the Code") to properly exhaust his claims. ILL. ADMIN. CODE, tit. 20, §§ 504.810, 504.850. An inmate must first attempt an informal resolution though a prison counselor. *Id.* at § 504.810. If the complaint remains unresolved, the inmate must submit a formal complaint to the prison's grievance officer who makes a

recommendation to the warden. *Id.* The warden then issues a final decision at the institutional level. *Id.* If the inmate is still unsatisfied, he can appeal to the Director of the IDOC through the Administrative Review Board. *Id.* at § 504.850.[1]

The issue in this case concerns the third and final step of the IDOC's grievance process: the appeal to the ARB. According to the Code, the ARB is to make a decision within six months after receipt of the appealed grievance "where reasonably feasible under the circumstances. ILL. ADMIN. CODE, tit.20, § 504.850(f). Here, the ARB received Woods's appeal on March 6, 2014. It is undisputed that the ARB did not reach a decision within six months. After another two months passed without a response, Woods filed suit.

As the Administrative Code clearly indicates, the recommended six-month timeframe for the ARB to respond should be adhered to "where reasonably feasible under the circumstances." ILL. ADMIN. CODE, tit.20, § 504.850(f). But as Magistrate Judge Wilkerson noted, the six-month timeframe is not a strict deadline for the ARB to respond to an inmate's appeal. *See Ford v. Johnson*, 362 F.3d 395, 400 (7th Cir. 2004). *See also Gregory v. Santos*, No. 07-CV-669-JPG-CJP, 2010 WL 750047, at *6 (S.D. Ill. Jan. 19, 2010), *report and recommendation adopted as modified*, 2010 WL 750040 (S.D. Ill. Mar. 3, 2010) ("Section 504.850(f) does not strictly require the Director to respond to an appeal within six

---

[1] Defendants assert in their brief that "unless and until a final decision is issued by the ARB, the offender has not completely exhausted his administrative remedies" (Doc. 24, p. 6). That is not correct. The Seventh Circuit has rejected the notion that prisoners absolutely cannot file suit until the ARB's decision is issued, regardless of how they handle the appeal or how long it takes them to process the appeal. *See Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir.2002) ("[W]e refuse to interpret the PLRA so narrowly as to permit prison officials to exploit the exhaustion requirement through indefinite delay in responding to grievances." (internal quotation omitted)).

months."); *Beahringer v. Page*, 789 N.E.2d 1216, 1226 (Ill. 2003) ("The time frames for the consideration of grievances were directory and not mandatory.") Accordingly, it appears to be widely accepted that the grievance process does not become unavailable simply because a response is tardy. *See, e.g., Ford*, 362 F.3d at 400 (rejecting inmate's argument that the administrative process is no longer available once the recommended deadline has passed); *Beahringer*, 789 N.E.2d at 1226 (holding that because the time frames were not mandatory, "they did not grant plaintiff an automatic right of action."). There is a point, however, where a tardy response becomes an unavailable process. *See Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (holding the PLRA does not allow prison officials to "exploit the exhaustion requirement through indefinite delay in responding to grievances"). But as the Northern District of Illinois noted, it is unclear exactly where that point is. *Jamison v. Franko*, No. 12 C 0242, 2013 WL 5166626, at *3 n.3 (N.D. Ill. Sept. 13, 2013).

The Court has combed through relevant authority searching for an explanation as to the distinction between a tardy response and an unavailable process. There is no clear answer, but the Court was able to discern two general principles. First, one line of cases has found that prisoners failed to exhaust their administrative remedies when they filed suit less than one month past the suggested response deadline. In other words, courts are unwilling to find that a tardy response has become an unavailable process if the prisoner made a beeline for the court immediately after the recommended response time expired. *See Mlaska v. Shah*, 428 F. App'x 642, 645 (7th Cir. 2011) (prisoner failed to exhaust where, at best, he filed lawsuit one month after the warden's 60-day response

period elapsed); *Jamison*, 2013 WL 5166626, at *3 (prisoner failed to exhaust where he filed suit less than two weeks after the 30-day response period had elapsed); *Gregory*, 2010 WL 750047, at *6 (prisoner failed to exhaust where he gave the ARB "only a few days leeway beyond the six-month period"). *But see Kyles v. Mathy*, No. 09-1084, 2010 WL 3025109, at *4 (C.D. Ill. Aug. 2, 2010) (prisoner exhausted when he waited approximately one and a half months after the expiration of the two-month response deadline before moving on to next step of grievance process); *Green v. Hartman*, No. 04 C 4304, 2006 WL 2699336, at *3 (N.D. Ill. Sept. 18, 2006) (prisoner exhausted where he waited to file suit until two months after the expiration of the 30-day response deadline); *Goodman v. Carter*, No. 2000 C 948, 2001 WL 755137, at *3 (N.D. Ill. July 2, 2001) (prisoner exhausted where he waited to file suit until 45-days after the warden's response was due).

Another line of cases has held that a prisoner has done all that is reasonable to exhaust if he properly filed his grievance but did not receive a response within the suggested timeframe, and he was not given any instructions on how to proceed. *See Turley v. Rednour*, 729 F.3d 645, 650 n.3 (7th Cir. 2013) ("This court has declined to find exhaustion where the prisoner himself made some error in following grievance procedure. However, when the prisoner follows procedure but receives no response due to error by the prison, this court has found that the prisoner exhausted administrative remedies."); *White v. Bass*, No. 10-CV-1662, 2011 WL 1303393, at *4 (N.D. Ill. Mar. 31, 2011) ("[A] prisoner . . . is not held accountable when he follows the proper procedures and prison officials mishandle the grievance."). *See also Dole v. Chandler*, 438 F.3d 804, 809–11 (7th Cir. 2006) (rejecting argument that prisoner failed to exhaust when he

properly submitted grievance, prison officials lost it, the ARB did not give him any instructions on how to proceed after learning that grievance was lost, and he waited 18 months before filing suit); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005) (rejecting argument that prisoner failed to exhaust when he properly filed his grievance, the prison's policy did not instruct prisoner on what to do if officials failed to respond, and he waited between one and four months for a response to his grievance before filing suit).

Based on those two lines of cases, there appear to be four questions pertinent to the determination of whether the ARB's failure to respond to Woods's appeal within the suggested timeframe rendered the grievance process unavailable: (1) Was the appeal properly filed? (2) Was the lack of a response within the six-month time period the fault of the ARB? (3) Was Woods given any instruction on how to proceed in the event that his appeal to the ARB was lost, ignored, or in limbo beyond the six-month period? And (4) if not, did Woods wait at least one month past the suggested six-month response deadline before filing suit?

Here, the answer to each question can be resolved in Woods's favor. First, Woods did not make any errors in following the grievance procedure. At each step of the grievance process, he submitted his complaint to the proper official within the timeframe prescribed by the administrative rules. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). It is uncontested that his appeal was properly filed.

Second, the lack of a response within the six-month time period was unquestionably due to the ARB's dilatory conduct. Importantly, Defendants have not

put forth any evidence indicating the ARB was unable to respond to Woods's appeal within the suggested timeframe, let alone evidence indicating that special circumstances necessitated almost a year to issue its decision. At the *Pavey* hearing, their attorney suggested that it was not reasonably feasible for the ARB to respond within six months, or even within eight months, because "the ARB was going through staffing changes at that time" (Doc. 42, p. 7). But a statement from an attorney in open court is not evidence. *United States v. Diaz*, 533 F.3d 574, 578 (7th Cir. 2008) ("Counsel's unsupported statements are, of course, not evidence." (citing *Campania Mgmt. Co. v. Rooks, Pitts & Poust,* 290 F.3d 843, 853 (7th Cir. 2002)).

Third, Woods had no guidance on what, if anything, he should have done if the ARB failed to respond to his grievance within the six-month period. The Code is completely silent. The ARB did not provide him any instructions on how he should have proceeded. And, there is no case law that instructs prisoners on who to contact or what actions to take if their grievance is not answered within the designated time period. *See Ebrahime v. Dart*, 899 F. Supp. 2d 777, 784 (N.D. Ill. 2012) ("[N]either *Dole* nor *Brengettcy* set forth a rule that an inmate must follow up, in some unspecified fashion, on grievances that fall on deaf ears.") In other words, there is no "publicly available material explaining in terms intelligible to lay persons how to proceed in the situation in which [Woods] found himself." *Roberts v. Neal*, 745 F.3d 232, 235 (7th Cir. 2014).

Fourth and finally, Woods did not make a beeline for the Court after the six-month response deadline expired. He waited an additional two months.

In sum, the evidence indicates that Woods followed all of the rules and processes

that were available to him. After six months went by without a response, how was he supposed to know whether his grievance had been lost, ignored, or simply delayed? He was left in the dark and forced to make a blind guess as to whether he had waited long enough to file suit. Now Defendants contend that he guessed wrong and should be thrown out of Court.

The grievance process, however, is not intended to be a game of "gotcha" or "a test of the prisoner's fortitude or ability to outsmart the system." *Shaw v. Jahnke*, 607 F. Supp. 2d 1005, 1010 (W.D. Wis. 2009) (citation omitted) *See also LaFauci v. New Hampshire Dep't of Corr.*, No. CIV.99-597-PB, 2005 WL 419691, at *14 (D.N.H. Feb. 23, 2005) ("While proper compliance with the grievance system makes sound administrative sense, the procedures themselves, and the directions given to inmates seeking to follow those procedures, should not be traps designed to hamstring legitimate grievances.") Rather, the grievance process is meant to provide notice to prison administrators of a problem so that they have an opportunity to address it without litigation. *Porter v. Nussle,* 534 U.S. 516, 524–25 (2002).

Woods did just that—he gave the ARB a chance to address his grievance. But the ARB dawdled in doing so without giving Woods any information or indication that the grievance process was still ongoing. It was the ARB's silence rather than any negligence or manipulation on Woods's part that prevented him from completing the grievance process. Therefore, it cannot be said that he failed to exhaust his administrative remedies, and Defendants are not entitled to summary judgment. To hold otherwise would penalize Woods for the inaction of the ARB and allow the ARB to exploit the

exhaustion requirement by delaying their response to inmate grievances.

Defendants' attempt to escape this conclusion by relying *Ford v. Johnson* is unconvincing. In *Ford*, the prison regulation required officials to rule on inmate appeals within 60 days "whenever possible," and the Seventh Circuit concluded that inmate's remedies were not "unavailable" simply because a decision from prison officials took six months. *Ford v. Johnson*, 362 F.3d 395, 400 (7th Cir. 2004). Defendants suggest that if it was acceptable in *Ford* for prison officials to take six months to respond when the regulations set a sixty-day deadline, then it is likewise acceptable for the ARB to take eleven months to respond when the regulations set a six-month deadline (Doc. 45).

The Court thinks that this case is easily distinguishable from *Ford*. In *Ford*, after the ARB received the prisoner's appeal, it informed the prisoner that a hearing had been scheduled and his live testimony would be taken. *See* 362 F.3d at 397, 400. Thus, even though the ARB did not issue a decision within the sixty-day period set forth in the regulations, the ARB was in communication with the prisoner, and the prisoner knew that his appeal was still being considered. The prisoner never had any reason to wonder if his appeal had been lost or ignored. In situations such as this, where it is clear that the grievance process is still ongoing even though the response is tardy, it makes sense to require the prisoner to wait for the decision before filing suit. *See also Toney v. Briley*, 813 N.E.2d 758, 759 (Ill. App. Ct. 2004) (holding prisoner failed to exhaust when he filed suit less than one month after the six-month response deadline had passed and before he submitted to polygraph test requested by the ARB).

Conversely here, after the ARB received Woods's appeal, he was left completely

in the dark. The ARB did not respond to his appeal within six months or make any effort to otherwise communicate with him. He was left to wonder if his appeal had been lost or ignored, and he was unaware of when, if ever, he might receive a response. Because it was not clear that the grievance process was still ongoing, he was not required to wait for the ARB's decision before filing suit. *See Randle v. Corbitt*, No. 3:13-CV-01009-SMY-PMF, 2015 WL 720578, at *3 (S.D. Ill. Feb. 18, 2015) (chastising the ARB's "dilatory conduct" in taking eight months to respond to inmate's appeal); *Levi v. Briley*, No. 06 C 0678, 2006 WL 2161788, at *3 (N.D. Ill. July 28, 2006) (refusing to find inmate did not exhaust when he waited two years for a response from the ARB before filing suit); *McNeal v. Cook Cnty. Sheriff's Dep't*, 282 F. Supp. 2d 865, 868 n.3 (N.D. Ill. 2003) (finding prisoner exhausted where he waited eleven months for prison officials to respond to his grievance before filing suit); *Smith v. Boyle*, No. 02 C 2788, 2003 WL 174189, at *3 (N.D. Ill. Jan. 27, 2003) (finding prisoner exhausted where he waited seven months for prison officials to respond to his grievance before filing suit).

In conclusion, Woods properly filed his appeal, but the ARB did not respond within the six-month timeframe, and Woods had no instructions on how to proceed. Accordingly, the grievance process was no longer available to him, and Defendants are not entitled to summary judgment based on their argument that Woods filed his lawsuit before properly exhausting his administrative remedies.

In light of this conclusion, the Court finds it necessary to consider Defendants' second argument that Magistrate Judge Wilkerson did not reach: that Woods's grievance failed to meet the particularity requirement of § 504.810(b) because he did not describe

the Defendants' conduct or identify them by name. Section 504.810(b) of the Illinois Administrative Code requires that inmate grievances "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." ILL. ADMIN. CODE, tit.20, § 504.810(b). This version of the Code became effective on May 1, 2003, and thus was in effect when Woods filed his grievance. *See* 27 Ill. Reg. 6285–86 (April 11, 2013). However, while the statute "mandates that grievances include the name or a description of the persons involved in the complaint . . . the Department of Corrections has been slow to make that requirement explicit on the forms it gives inmates." *Conley v. Anglin*, 513 F. App'x 598, 601 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 794 (2013). Woods filed his grievance on a prison form dated 2001, and the form only asked for a "Brief Summary of Grievance;" there was no indication on the form that names had to be provided (*See* Doc. 24-2, p. 4). Under these circumstances, the Seventh Circuit has held that inmates do not need to include names or identifying information in their grievance. *Jackson v. Shepherd*, 552 F. App'x 591, 593 n.1 (7th Cir. 2014); *Conley*, 513 F. App'x at 601; *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

Furthermore, although Woods did not name Defendants in his grievance, the grievance implied that one of the issues he was complaining about was their failure to warn him that the valve was not working properly.[2] Accordingly, Woods's grievance

---

[2] The grievance states in pertinent part: "Prior to this incident on nov. 12th, 2012 as I worked in the kitchen all of the large cooking pots (kettles) was broke down and the employee plumber was working on it the entire time of my shift from 1–9 p.m. and as I came to work today, I was told as well as I saw everything appeared to be in working order this was checked and clearly negligence of great porportions [sic] and something must be done to ensure no one gets killed or seriously injured doing their jobs." (Doc. 24-2, pp. 4–5).

provided enough information to alert prison officials to his complaint and give them a fair opportunity to correct it, which is the primary purpose of a grievance. *Jones v. Bock*, 549 U.S. 199, 219 (2007); *Maddox*, 655 F.3d at 721, 722; *Johnson v. Johnson,* 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation.") Woods thus exhausted his remedies with respect to all three Defendants.

## CONCLUSION

The Court **REJECTS** Magistrate Judge Wilkerson's Report and Recommendation (Doc. 43). Defendants' Motion for Summary Judgment on the issue of exhaustion (Doc. 23) is **DENIED**.

**IT IS SO ORDERED.**

DATED:   March 12, 2015

s/ Nancy J. Rosenstengel<br>
**NANCY J. ROSENSTENGEL**<br>
**United States District Judge**